IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. **01-K-2324**

**CHARLES T. GREEN, PHILLIP R. WENTLAND and MARILYN BREITHAUPT**,

       Plaintiff,

v.

**SEARS, ROEBUCK & COMPANY, a New York corporation**,

       Defendants.

_____

MEMORANDUM OPINION AND ORDER
_____

KANE, J.

      Plaintiffs, former Sears appliance repair technicians, brought claims for age discrimination against Sears, Roebuck & Co. ("Sears") after they were laid off in 2000 as part of a restructuring/consolidation of technician services from several Denver area Sears facilities to a centralized facility in Aurora, Colorado. At the time of their termination, Plaintiffs were employed at Sears's service facility in Thornton, Colorado (the "Thornton Facility"). The restructuring called for the closure of Thornton Facility, and Plaintiffs applied, but were not selected, for technician positions at Aurora. Plaintiffs received modest severance packages and Sears terminated their employment. At the time, Plaintiffs Charles Green (age 59), Philip Wentland (53) and Marilyn Breithaupt (48) were within the protected class of persons under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 623 *et seq.*

      Despite having initially signed releases as part of their severance packages, Plaintiffs filed suit, asserting the releases were invalid based on inadequate disclosures under the Older Worker Benefits Protection Act of 1990 (OWBPA), 104 Stat. 983, 29 U.S.C. § 626(f)(1), and claiming they were unlawfully targeted for termination based on

their ages and length of service.  Defendants filed a Motion for Summary Judgment seeking to enforce the releases as signed, which Motion I denied in *Green v. Sears, Roebuck & Co.*, 298 F. Supp.2d 1102 (D. Colo. 2003) (also granting Plaintiffs' Cross-Motion for Summary Judgment as to the invalidity of Plaintiff Wentland's release as a matter of law).  A lengthy discovery period ensued, and the case is before me now on Defendants' Motion for Summary Judgment on the merits of Plaintiffs' individual age discrimination claims.  I deny the Motion.

I. Summary Judgment Standard.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In applying this standard, I view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party.  *Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999).  Sears, as the moving party, has the initial burden of showing the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law.  *Id.*  If Sears carries this burden, then the burden of production shifts to Plaintiffs to "set forth specific facts showing there is a genuine issue for trial."  Fed. R. Civ. P. 56(e); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). A genuine issue of material fact exists if a rational juror could decide the disputed allegations in the non-movant's favor based on the evidence presented and the disputed fact might affect the outcome of the suit under the governing law. *See Schwarz v. Bhd. of Maint. of Way Employees*, 264 F.3d 1181, 1183 (10th Cir. 2001).  Summary judgment is appropriate "only where the evidence and all inferences to be drawn therefrom are so

clear that reasonable minds could not differ on the conclusion." *Greene v. Safeway Stores, Inc.*, 98 F.3d 554, 557 (10th Cir. 1996)(quoting *Motive Parts Warehouse v. Facet Enter.*, 774 F.2d 380, 385 (10th Cir. 1985)). In employment discrimination cases, "[a] ruling which deprives a party of a determination of the facts by a jury should be cautiously and sparingly granted." *Id.* at 560.

## II. DISCUSSION.

### A. Legal Standard.

Under the ADEA, it is "unlawful for an employer ... to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). When a plaintiff alleges disparate treatment, "liability depends on whether the protected trait (under the ADEA, age) actually motivated the employer's decision." *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993). That is, whatever the employer's decisionmaking process, a disparate treatment claim based on age cannot succeed unless the employee's age *actually* played a role in that process and had a determinative influence on the outcome. *Id.* That is not to say plaintiff must prove age was the "sole" reason for the employer's decision, only that age was a factor, and the factor that "made the difference." *EEOC v. Prudential Federal Savings & Loan Ass'n*, 763 F.2d 1166, 1170 (10th Cir.), *cert. denied*, 474 U.S. 946, 106 (1985).

At the summary judgment stage, and in the absence of any direct or "smoking gun" evidence that plaintiff's age was the employer's actual motivation in pursuing the adverse employment action, the Tenth Circuit uses the three-stage analysis outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973), to evaluate claims under the

ADEA.  *McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1128 (10th Cir. 1998). Under this framework, plaintiff must initially establish a *prima facie* case of age discrimination by coming forward with evidence tending to demonstrate that (1) plaintiff is within the protected age group; (2) plaintiff was doing satisfactory work; (3) plaintiff was discharged (or here, not rehired); and (4) plaintiff's position was filled by a younger person. *Id.* (citing *Cone v. Longmont United Hospital Ass'n*, 14 F.3d 526, 528-30 (10th Cir.1994)). In the second stage, the defendant must carry the burden to provide a facially legitimate nondiscriminatory reason for plaintiff's termination. *Id.*  If defendant does so, then any presumptions of discrimination fall away and plaintiff assumes its regular burden of proving age was the determinative factor in defendant's employment decision. *Id.*  On summary judgment, plaintiff may meet this burden by demonstrating either that defendant's explanation is unworthy of credence and therefore merely a "pretext" for discrimination, or show that irrespective of defendant's stated explanation, age more likely than not motivated defendant's actions. *See id.* (citing *Cone* and *Faulkner v. Super Valu Stores, Inc.*, 3 F.3d 1419, 1425 (10th Cir.1993)).

Because Sears concedes, for purposes of summary judgment, the existence of a *prima facie* case of discrimination for each Plaintiff and because Plaintiffs do not dispute Sears has offered a facially nondiscriminatory reason for its hiring decisions, I limit my analysis to the issue of pretext.

### B.  Pretext.

A plaintiff typically makes a showing of pretext in one of three ways: (1) with evidence that the defendant's stated reasons for the adverse employment action were false; (2) with evidence that the defendant acted contrary to a written company policy prescribing the action to be taken by the defendant under the circumstances; or (3) with

evidence that the defendant acted contrary to an unwritten policy or contrary to company practice when making the adverse employment decision affecting the plaintiff. *Plotke v. White*, 405 F.3d 1092, 1102-03 (10th Cir. 2005) (citations omitted). The plaintiff's evidence can also allow for an inference that the "'employer's proffered non-discriminatory reasons [were] either a post hoc fabrication or otherwise did not actually motivate the employment action (that is, the proffered reason is a pretext).'" *Id.* (quoting *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir.1994)). Evidence of pretext may also include the use, by the employer, of subjective criteria in its employment decision. *Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1217-18 (10th Cir. 2002)(citing *Simms*, 165 F.3d at 1328 and *Colon-Sanchez v. Marsh*, 733 F.2d 78, 81 (10th Cir.1984)).

Sears maintains Brooks made the decision not to retain or hire the individual Plaintiffs for positions at Aurora based on their scores in a combination of technical and "leadership skills" interviews conducted by members of Sears's national redesign team. The "leadership" component, a measure of an individual's "attitude" and openness to the redesigned team concept being implemented, was considered an important "soft skill" for successful reorganization and was assessed by national redesign team member Nancy Savard.[1]

Ms. Brooks was solely responsible for the decision of whom to hire and whom to let go. As grounds for its decision not to hire Plaintiffs for positions at the new Aurora Facility, Sears explains that Ms. Brooks, on the basis of her discussions with redesign team members in their conference call, "perceived that Mr. Wentland did not want the job, that Ms. Breithaupt had failed her technical interview, and that Mr. Green was

---

[1] Savard, in her deposition, explained her role in the redesign leadership interviews as being to assess candidates' "soft skills," which she defined in terms of their willingness and enthusiasm for change. Savard Dep. at 54-56.

hostile towards the new assembly-line approach." Reply at 1. Plaintiffs concede they were ambivalent about the new team concept but deny they were "hostile" towards it or any more ambivalent than other long term employees who were facing the change. Plaintiffs insist they wanted the new positions and claim they were denied them not for the reasons stated, but because of their age and length of service. Plaintiffs attempt to establish pretext by pointing to inaccuracies, contradictions and inconsistencies both in Ms. Brooks's 2005 affidavit and deposition testimony, as well as to Sears's evolving explanation for their decisions not to hire them over the five-year period since they were made.

### C. Merits.

The following facts are undisputed unless otherwise noted:

In deciding which technicians to retain and rehire for the Aurora Facility, Sears employed a facially neutral interview process. Sears brought in four members of its national "redesign team" to conduct "leadership" and "technical" interviews of candidates. Following those interviews, Brooks held a conference call with team members to discuss candidates and their scores. Citing the redesign team's findings, Brooks made the ultimate decision of whom to retain and hire for the Aurora Facility and whom to let go. Only employees who had applied for positions at the new facility and been rejected could qualify for severance and/or early retirement.

*Plaintiff Green.*

Brooks rejected Green for a Mechanical Technician position at the new facility and hired Josie Padilla, age 39, instead. In her affidavit, Brooks offers the following grounds for her decision: (1) redesign team member Nancy Savard's representation in the conference call "that Mr. Green was not supportive of the redesigned process'"; (2)

Brooks's belief that "Mr. Green was not able, for medical reasons, to go into the field"; (3) the fact "Green scored 2.9 in his leadership interview . . . . [while] [t]hree of the people hired [not including Padilla, whose score is not disclosed] scored as follows: Reavis 3.2, Dean 3.4, Kossman 3.7"; (4) her "belie[f] that Ms. Padilla was more willing to work on lawnmowers than Mr. Green . . . [and] Sears consistently needs more L & G technicians every Spring to repair lawnmowers"; and (5) because "[u]nlike Mr. Green, Ms. Padilla scored at acceptable levels in Change Leadership and Team Skills." Brooks Affid. at ¶¶ 24-30.

In evaluating Plaintiffs' evidence of pretext, Green's own testimony supports an inference that his concerns regarding the new process at Aurora were no more or less than others' and that he wanted the job at Aurora and was willing to do it.

In her affidavit and deposition testimony, Brooks relied heavily on Green's 2.9 score on the Leadership Skills Assessment Form and undisclosed statements attributed to Savard in a conference call regarding Green's lack of "support" for the new process. The evidence, however, reveals that Padilla also scored a 2.9 on her Leadership Skills Assessment – a fact omitted by Brooks in her affidavit and not mentioned by Sears in its briefing – and, like Green, was ambivalent about the new process. *Compare* Green's Leadership Skills Interview Guide #1 Assessment Form (Ex. Q, Defs.' Mot. Summ. J.)(Savard's interview form stating "Charlie is Technically [sic] sound, but lacks the enthusiasm and team spirit that is needed for a redesigned unit") *with* Padilla's Leadership Skills Interview #1 Assessment Form (Ex. S) (Currier's conclusion that "Josie . . . [is] NOT especially excited [about the changes] but a little apprehensive")(emphasis original)). By highlighting the higher scores of Reavis, Dean and Kossman and omitting Padilla's score, and then pointing to the only two categories

("Change Leadership" and "Team Skills") in a series of nine in the "Leadership Skills" category in which Padilla outscored Green,[2] Brooks's affidavit is susceptible to a reading that it is deliberately misleading and lacking in credibility, therefore supporting an inference of pretext. *See Randle v. City of Aurora*, 69 F.3d 441, 451 (10th Cir. 1995)(denying employer's summary judgment motion on failure to promote claim because employer's assertion that plaintiff was unqualified for a position due to insufficient education was called into question by the fact that the person who got the job also did not meet the education requirement listed in the job posting.)

Brooks's statements praising Padilla's application to the Lawn & Garden (L & G) Department and her "willing[ness]" to work in the in-demand category of lawnmower repair are also suspect. Padilla's own testimony is that despite her application to the L & G Department, she was actually hired as a Mechanical Technician, the job category for which Green had applied and was rejected. Once she arrived at the Aurora Facility, moreover, Padilla did not work on lawnmowers at all, but on sewing machines and, notably, vacuum cleaners, one of Green's specialties. *See* Padilla Dep. at 58, 95, 106.

There is a general sense, reading the deposition transcripts in this case, that much of the point-counterpoint on the issue of pretext, and Brooks's/Sears's motivation generally, reduces to who among the players will be perceived to be most credible. Though a knowledgeable and compelling witness, Savard in her deposition could not

---

[2] A side-by-side comparison of the Assessment Forms shows Green, on a five point scale from low to high, scored two "2"s, six "3"s and one "4" in a series of nine categories that include subjective criteria such as "interpersonal skills/enthusiasm," "valuing diversity," and "two-way communication." Padilla, on her Form, scored three "2"s, seven "3"s, and one "4." The extra scores for Padilla were the result of an unexplained circling of both "2"s and "3"s in the "Interpersonal Skills/Enthusiasm" and "Initiative/Sense Urgency [sic]" criteria. *Compare* Exs. Q and S, attached to Defs.' Mot. Summ. J. Even assigning a 2.5 value to Padilla's double scores gives her an overall average virtually identical to Green's.

recall making any negative recommendation of Green (and did not recognize having made the notes on Ex. Q, her Assessment Form or ever having seen Green at all), suggesting the statements attributed by Brooks to Savard in her affidavit are and will remain inadmissible hearsay.[3] Redesign team member Bob Garcia, moreover, came to the conclusion that Green could make the transition to the new system just fine. Brooks's explanation of why she gave greater or different weight to Savard's judgment rather than Garcia's will be for the jury to assess. Sears's Motion for Summary Judgment on Green's age discrimination claims is DENIED.

*Plaintiff Wentland.*

Plaintiff Philip Wentland was a senior Lawn & Garden technician with 35 years at Sears at the time the redesign plan was being implemented. Wentland applied for an L & G Service Technician position at the new Aurora Repair Center but was not hired. According to Brooks, her decision not to rehire Wentland for the Aurora Facility was "based on his attitude towards the new process, his statements that he did not want the job, his indications that he wanted a severance package, and the resulting two 'no offer' recommendations from his [redesign team] interviews." Brooks Affid. at ¶ 17. Sears does not dispute Wentland was qualified for the position in terms of his technical skills and experience.

Wentland acknowledges ambivalence about the new approach after 35 years with Sears and concedes he may have made comments about wanting to retire, but states that

---

[3] I note the redesign team's task in terms of assessing candidates' "soft" or "leadership team" skills was only to conduct the interviews, make observations and communicate them to the human resources person in charge of making hiring decisions, and not to opine or make hiring recommendations. Savard Dep. at 51-58. Savard, for her part, denies any memory at all of Green, Green's interview, or the notes she may or may not have written on the assessment form she signed. *Id.* at 75, 79, 83-85.

was "a dream" and that there was "no way possible" for him to do so at the time. *See* Wentland Dep. at 84 ("I knew I had to work."). Wentland denies he was looking for an out and, in fact, sought other employment as soon as he left. Wentland points to the fact that he was the last technician left at Thornton before it closed and, after training temporary workers and coordinating the clean-up there went to another facility to do the same, as evidence that Sears, in fact, was aware of his positive attitude and desire to keep working. *Id.* at 76-77, 224-25.

According to Wentland, Sears seized on an offhand pie-in-the-sky comment he made about wanting to retire as a pretext for terminating an experienced technician on the basis of his age and seniority. The only "evidence" Wentland offers that is probative of pretext, however, is his own testimony. The other "facts" offered – i.e. his technical skills and history of positive performance reviews and his positive attitude in wrapping things up at the Thornton facility – are only probative of pretext to the extent they support Wentland's assertion that he *did* want the position at Aurora and was not merely going through the motions of applying in order to qualify for retirement. Because Brooks purportedly based her hiring decision solely on Wentland's negative attitude about the new team approach to repair services and the desire to retire, facts demonstrating Wentland's technical proficiency are not relevant to the issue of pretext.

Nevertheless, I am reluctant to take the question of Wentland's attitude and desire to make the change to the Aurora Facility from a jury. Given the subjective nature of the judgment made by Sears, a jury should be the final arbiter of what Wentland, in fact wanted and believed. However tangential, a determination that Wentland in fact wanted the job and that Sears could not reasonably have believed otherwise could, in fact, support an inference that Sears merely used Wentland's wishful statements regarding

retirement as an excuse to terminate him on the basis of age. *See Randle*, 69 F.3d at 453-54. Sears's Motion for Summary Judgment as to Plaintiff Wentland's age discrimination claims must be DENIED.

*Plaintiff Breithaupt.*

According to Brooks, she declined to hire Marilyn Breithaupt for a Service Technician position at Aurora on the redesign team's recommendation after Breithaupt scored poorly (an average of 2.7 out of 5) in her technical skill interview with redesign team member Steve Currier. Brooks Affid at ¶ 20. At the time of her application, Breithaupt was 48 years old. Two of the three individuals who were hired as Service Technicians – Beckman and Weinzapfel – were older than she (at 61 and 57, respectively). The third, Mr. Blankenship, was 38. Only Weinzapfel had been a Thornton employee and had undergone the redesign team interviews and his technical score was 3.7. According to Brooks, she viewed the technical skills of Beckman, Weinzapfel and Blankenship as "significantly superior to those of Ms. Breithaupt." *Id.* at ¶ 21.

Breithaupt contends her technical interview did not adequately represent her ability and history of performance and that, with respect to Blankenship at least, her skills were far better. At the time of her application, Breithaupt had been employed by Sears for 26 years, had been trained and certified by Sears to work on electrical appliances and had received awards and consistent positive performance reviews. Blankenship, by contrast, scored in the "lowest possible rankingcategory [sic] on his technical exam when he applied for the same Electronic Service Technician position Breithaupt was applying for." Response at 69 (citing Ex. 23, Blankenship scoring Sheet, Bates No. 03180).

Sears essentially concedes Blankenship's poor technical skills and allows for the

possibility that Breithaupt's technical interview was inaccurate. According to Sears, however, this does not matter because Brooks's hiring decisions were based on her "perception" of the applicants' respective technical skills as conveyed to her by redesign team members and the redesign team recommended against hiring Breithaupt. Because Breithaupt cannot raise a factual issue casting doubt on the fact of the negative recommendation or Brooks's reliance on it, summary judgment must enter in favor of Sears. *See* Reply at 8-9 ("an expert recommended against hiring [Breithaupt] . . . . [and] in favor of hiring [Blankenship] . . . . [t]hus, it remains undisputed that Ms. Brooks's decision was based on her perception of their respective technical abilities and Plaintiffs do not raise a factual issue.").

While there is an obvious facility to Sears's reasoning, it is uncompelling. Sears cannot shield itself from liability for age discrimination by delegating hiring decisions to the "perceptions" of a manager derived second-hand from the subjective impressions of others that may be completely inaccurate as a matter of fact. Given testimony in the record, moreover, that redesign team members were *not* decisionmakers and did *not* perceive their role as being to make specific hire/don't hire recommendations for individual facilities, and further testimony suggesting Brooks's explanation for this particular hiring decision (Blankenship over Breithaupt) lacks credibility, I find sufficient indicia of pretext to deny the Motion for Summary Judgment.

In her deposition testimony, for example, Brooks initially said someone else, Virginia Ballou, actually made the final decision to hire Blankenship over Breithaupt and disclaimed knowledge of Blankenship's poor performance scores. *See* Brooks Dep. at 177-118, 129-31. When presented with documentation showing she actually interviewed Blankenship, Brooks recalled doing so and that she had rated him poorly. *Id.* at 131.

With respect to Ms. Breithaupt, Brooks stated she had worked with her for years and thought she was "sound," "had good leadership skills," and "would work in a redesigned facility." *Id.* at 114. Brooks was surprised when "weaknesses were found during the interview process," *id.* at 112, but ultimately deferred to redesign team members when they discussed Breithaupt on the conference call. *Id.* at 114. Either Ms. Brooks had sole and final authority to make hiring decisions for Aurora and her view of Breithaupt's skills is binding on Sears or she did not. Having that authority but sublimating it to the subjective recommendations of others who do not have it reveals a strain in the review process that should be scrutinized by the trier of fact.

### III. CONCLUSION.

It is undisputed that the "Leadership Skills" component of the interview process formed the principle basis for Brooks's decision not to hire Plaintiffs Wentland or Green for positions at the Aurora Facility. The nine categories of "soft skills" making up individuals' "leadership" scores are unreservedly subjective. The fact Sears attempted through its national redesign team interview procedures to standardize and quantify these categories in order meaningfully to compare candidates' comfort-level and "enthusiasm" for the new process does not render them any less so.

The technical interview forming the sole basis for Brooks's decision not to hire Breithaupt is similarly subjective. The interview, conducted by redesign team member Steve Currier in a single half-hour setting, required Breithaupt to diagnose a problem and to instruct the interviewer on how to fix it. While the ratings were also made on a five-point scale designed to quantify and generalize skills across individual candidates' assessments, it resulted in a rating that conflicted with what Brooks knew to be Breithaupt's 26 year performance history with the company.

While the subjective nature of employee evaluations may not be sufficient by itself to establish pretext, it is a significant factor to consider. *See Simms*, 165 F.3d at 1328 ("[e]vidence of pretext may include . . . the use of subjective criteria"); *Bauer v. Bailar*, 647 F.2d 1037, 1046 (10th Cir.1981) (noting that although subjective criteria are not wrongful per se, they do "provide[ ] an opportunity for unlawful discrimination"). "Absent evidence that [the employer's] system of ranking and evaluation relies on objective criteria, we hold that [the employee] has satisfied his burden to demonstrate pretext . . . for the purposes of avoiding summary judgment." *Garrett*, 305 F.3d at 1218.

Under these standards, the subjective nature of the interview process and redesign team conclusions on which Brooks based her hiring decisions provides further support for Plaintiffs' claims of pretext. The evidence is strongest for Green in that the highly subjective conclusions reached in his "leadership skills" interview is the only reason given for hiring Josie Padilla over him. When viewed with other evidence demonstrating that Padilla received the same score as Green in her leadership skills interview, was rated less favorably than Green technically, and revealing the other reasons given for hiring her over Green lack credibility, there is sufficient indicia of pretext to survive summary judgment.

While Plaintiffs' evidence is less compelling for Wentland, he, too, is entitled to all reasonable inferences flowing from his own testimony and performance history running counter to the conclusions reached in a highly subjective interview process that he lacked the desire and mindset to continue working for Sears.

The subjective nature of the technical skills interview also supports a finding of pretext with respect to Marilyn Breithaupt. The interview, a half-hour exercise that ends with a result directly contradicting Brooks's own personal assessment of Breithaupt's 26

years with the company, is not by itself conclusive of pretext. When viewed alongside evidence showing Blankenship was a poor technical performer who received marginal scores in his leadership-type interview with Brooks herself, however, it lends support under *Randle* to Plaintiffs' contention that Brooks's stated reasons for refusing to hire Breithaupt lack credibility.

I conclude Plaintiffs have adduced sufficient evidence of pretext to withstand summary judgment. This should not be interpreted as expressing any view on the ultimate issue in this case, namely, that Sears's actual motivation in rejecting the applications of Green, Wentland and Breithaupt was age discrimination. This is a close case, and it is only on the basis of my own narrow view of a court's role on summary judgment that I reach a conclusion favoring Plaintiffs at this stage of the proceedings. *See generally*, A. Miller, *The Pretrial Rush to Judgment: Are the "Litigation Explosion," "Liability Crisis," and Efficiency Clichés Eroding our Day in Court and Jury Trial Commitments?* 78 N.Y.U. Law. R. 982, 1132 (June 2003)(standards of "human behavior, reasonableness, and state of mind [are] matters historically considered at the core province of jurors"). In Professor Miller's words, a decision now that no reasonable jury could find Sears's proffered reasons for rejecting these Plaintiffs' job applications are unworthy of credence and therefore pretexts for age discrimination "discount[s] (1) the importance of a jury's evaluation of witnesses, (2) the greater sensory impact on the trier of live testimony, and (3) the value of trial cross-examination based on . . . a full presentation of the evidence." *Id.* at 1090. The ultimate burden of proving Sears's actual motivation is Plaintiffs', and it will turn largely on who, among the various players in this case, present as the most credible witnesses. Both sides are encouraged to revisit their

respective risks under these standards in proceeding to trial.

Dated this 14th day of June, 2006.        **s/John L. Kane**
                                          SENIOR U.S. DISTRICT JUDGE